RYBERG et al. v. LUNDSTROM et al.

No. 4567.   Decided November 4, 1927.   (261 P. 453.)

*Leon Fonnesbeck*, of Logan, for appellants.

*Dey, Hoppaugh, Mark & Johnson*, of Salt Lake City, for respondents.

GIDEON, J.

E. W. Ryberg, and W. E. Ryberg, copartners doing business as Ryberg Bros., contractors, respondents, by this proceeding ask for a writ of mandate against defendants, appellants, A. G. Lundstrom, and H. P. Nielsen, and N. W. Merkley, city commissioners of Logan City, Utah, and H. R. Pedersen, city auditor and recorder of said city, "commanding defendants to proceed to give the necessary notices and take the necessary steps and proceedings to levy a valid and enforceable tax against" the property in a sewer district for the payment of certain city warrants issued in payment for construction of a sewer in such district. A writ as prayed for was issued by the court below. From that judgment this appeal is prosecuted.

Defendants demurred to plaintiffs' petition. The demurrer was overruled. Defendants answered, and plaintiffs demurred to the answer, upon the grounds that the facts alleged in the answer do not constitute a defense. This demurrer was sustained. Defendants elected to not plead further. Thereafter judgment was entered by the court,

granting the writ as prayed for. The facts, so far as material here, and which are accepted by all parties in the argument to be true, briefly stated, are:

On July 2, 1925, respondents entered into a contract with Logan City to construct a sewer in what is known as sewer district No. 9. By the terms of the contract respondents undertook to furnish all necessary material and labor to construct the sewer as specified in the contract. No contention is made here that the city commission, on behalf of Logan City, did not have the right to enter into the contract for the construction of the sewer, nor that the contract was not performed by respondents satisfactorily, nor that the sewer was not thereafter accepted by the city.

The contract, among other things, contained the following:

"The contractor shall be paid by the city according to the certified statement furnished by the city engineer, and approved by the board of commissioners, and the payment shall be made in coupon warrants drawn by the city auditor upon the city treasurer in the amounts as provided by law, payable out of the special fund raised by special assessment upon the property included in said levy.

"The said warrants shall indicate the time when each installment of the warrants is due and provide for interest at the rate of 6 per cent. * * *

"It is understood and agreed that the said contractor shall accept such special taxes upon warrants in full payment for work done and material furnished under this contract, to the amount of the sum named in each of said warrants and the interest as therein provided, and the city shall not be held liable for the payment of the costs of the improvement mentioned in said warrants, or for the payment of any of the coupons attached thereto, except to the extent of the funds received by it under the levy and assessment for said improvement; but the city shall be responsible for faithful accounting, collection, and settlement in paying the money of said funds, and when such account, collection, settlement, and paying is faithfully performed all further liability on the part of the city shall cease, and it is merely understood that the city shall exercise the authority conferred upon it by the law to collect said assessment."

On October 6, 1925, the city commissioners of Logan City passed an ordinance levying a special tax in said sewer district No. 9, and this ordinance was published in a newspaper printed at and circulated in and from Logan City on October 7. The city recorder caused to be published in the same paper a notice of a meeting of the board of equalization. It was stated in that notice that the board of equalization and review would meet on October 14, 15, and 16, 1925, to hear and adjust all complaints made by property owners against the assessment to be made in sewer district No. 9; that a list of such assessment could be found and examined in the office of the city recorder at any time before October 17, 1925. The notice also specified that all complaints should be filed on October 14, 15, or 16, and that an ordinance making the assessment final would be passed on October 17. On October 9, 1925, the city commission passed an ordinance confirming the tax levied in said district, and the same was published October 10. The city treasurer caused treasurer's notice of special tax levy to be published in the newspaper above referred to from October 12 to October 16, 1925, both dates inclusive. On October 10, the city treasurer caused a copy of the notice to be mailed to each of the property owners in the district.

The city commissioners, in the ordinance levying the special tax, divided the property in the district into four classes or grades, and designated such classes or grades A, B, C, and D. The property in class A was assessed at $1.70 per front foot; in class B, at $1.50 per front foot; in class C, at $1.20 per front foot; and in class D, at 99.9 cents per front foot. It is declared in the ordinance that the benefits to be derived from the making of the improvement are equal and uniform on the property within each class, but that the benefits to be derived are not uniform to all of the property in the district. The warrants or bonds were serial, 10 for $1,000 each, and 10 for $200 each, all being dated October 6, 1925. One-tenth of these bonds or warrants matured October 7, 1926, and one-tenth each year thereafter until

and including October 7, 1935. On November 14, 1925, Logan City delivered to respondents its special improvement sewer bonds, and the respondents on that day, in writing, acknowledge receipt of such bonds.

No notice was given or published of the meeting of the board of equalization, except the notice published on October 7, 1925, above referred to. No resolution of the city commission was passed appointing the board of equalization. There was no meeting of the board of equalization held on October 14, 15, or 16, 1925. No protests were filed on either of those dates by any property owner in said sewer district, nor have any protests or objections at any time been filed by any property owner in said district with the city commission, protesting or objecting to the special tax levy or to the classification made therein. It is admitted that the three members of the city commission, acting as the board of equalization, met relative to the said sewer district No. 9 on October 7, 8 and 9, 1925, but that no notice of said meetings was given. No protests or objections were filed by any one on either of those dates.

It is alleged and admitted that no other proceedings relative to the levy of the tax were had by Logan City. It is stated that approximately 80 per cent of the property owners in said district have paid the first assessment of said special tax so levied and assessed, that approximately 7 per cent have paid the tax in full, and that over 11 per cent of the entire special sewer tax assessment in said district has been paid by the property owners therein. It is alleged in the petition that the special tax levied and assessed against the property in the district is void and of no effect, for the reason that the city commissioners, in levying said tax, failed to comply with the laws of Utah and the ordinances of Logan City in the following respects:

"(a) No board of equalization was appointed, as required by Comp. Laws Utah 1917, § 683, as amended by chapter 15, Laws Utah 1921.

"(b) That no notice of the meeting of said board was given as required by said section as amended.

"(c) No notice of a meeting of said board was given as required by section 11 of the ordinances of Logan City.

"(d) No notice was given of any meeting of the board of equalization actually held, and no meeting was held at the time specified in the notice given.

"(e) That said ordinance levying the special tax classified the property in said sewer district into classes A, B, C and D, and the tax in said classes is $1.70, $1.50, $1.20, and 99.9 cents per front foot, respectively, and no basis is shown for said classification.

"(f) Said bonds are payable in 10 annual installments beginning October 6, 1925.

"(g) The ordinance levying the tax provides that the bonds shall be drawn in amounts of $1,000 each, except the last while the bonds issued are 10 for $1,000 each and 10 for $200 each.

"(h) Bonds are dated October 6, 1925. This special tax became effective October 7, 1925."

It is the contention of respondents that under the provisions of the contract they were entitled to have and receive from Logan City warrants secured by taxes legally levied against the property in the sewer district, and that it was the manifest duty of appellants, as the city commissioners and the city recorder, to so proceed in making the levy that the warrants delivered to them as provided by the contract should constitute a legal and subsisting lien against the property in the district; that appellants have failed to make such warrants so received by them such legal and subsisting lien, by neglecting to give any notice of the meeting of the board of equalization at the time the board did meet, by enacting an ordinance levying the tax prior to the meeting of such board of equalization and review, and by issuing warrants bearing a date prior to the publication of the ordinance levying the tax and that in so doing said appellants have failed to perform a duty enjoined upon them by the statute. The section of the statute particularly relied upon is Comp. Laws Utah 1917, § 683, as amended by chapter 15, Laws Utah 1921.

In our judgment it is not necessary, nor are we required, in this proceeding, to determine the legality or illegality of the assessment and the tax levy made by the appellants as city officials in the sewer district in question. If it should be determined that the proceedings of the appellants in levying the tax did not conform to the requirements of the statute, and that therefore the tax is an illegal tax, nevertheless we are of the opinion that the writ prayed for should not issue under the facts made to appear. As we construe the statutes, to be hereafter noticed, if the appellants as city officials have neglected to make a legal assessment, the warrants executed by the city and delivered to respondents constitute a valid claim against the municipality of Logan City.

No suggestion is made in respondents' petition, or elsewhere in the record, that Logan City is not financially responsible, and is not abundantly able to pay the warrants delivered to them in payment for the work completed in this sewer district. It appears that a very large majority of the property owners have paid two installments of the taxes levied, and that some of the property owners have paid the taxes in full. Necessarily it would create confusion for the appellants to now levy an additional tax against this property, and, unless a failure so to do would result in an injustice to the respondents, appellants. ought not to be directed by mandamus to levy an additional or new tax against the property within the district. We entertain no doubt that the commissioners have the power and authority to make an additional levy or assessment, where a former assessment was illegal and void.

It is provided in Comp. Laws Utah 1917, § 748, as amended by chapter 16, Laws Utah 1921, as follows:

"The city or town, as the case may be, shall not be held liable for the payment of any special tax bond or warrant, except to the extent of the funds created and received by special tax levies or assessments and to the extent of the special improvement guarantee fund of such

city or town; but the city or town shall be held responsible for the lawful levy of all special taxes or assessments, for the creation and maintenace of the special improvement guarantee fund as provided by law, and for faithful accounting, collection, settlements and payments of the taxes levied for these purposes and the moneys of said funds."

Comp. Laws Utah 1917, § 699, as amended by chapter 15, Laws Utah 1921, after setting out that the special assessments made and levied to defray the cost and expense of special improvements and the collection of the same shall constitute a lien upon the property upon which the assessment is made from and after the date of the ordinance levying the assessment, and certain other provisions relating to the sale of property for delinquent assessments, contains this proviso:

"Provided, further, that in the event any property shall be illegally assessed, or any property which is by law exempt from assessment for local purposes, shall be so assessed, then, in such event, the city or town so assessing such property shall be liable to the holders of the warrants or bonds issued against the funds created by such assessments, which amount shall be paid from the general fund of the city or town."

If it be conceded that the levy of the tax in this case is illegal, in such event it seems reasonably clear that by reason of the above provisions of the statute Logan City is liable for the payment of the outstanding warrants held by the respondents. The city can only relieve its general fund from such liability by proceeding to make an additional levy, and in so doing comply with the provisions of the statutes outlining the procedure to be followed in making such levy. Such being the fact, it does not appear that any injustice or wrong will be suffered by respondents by a failure to compel appellants to make an additional and new levy.

The law applicable under such state of facts, as ██ stated in 38 C. J. p. 550, is:

"The writ of mandamus issues only in case of necessity to prevent injustice or great injury. If there is a doubt of its necessity or propriety it will not go. Where the issue of the writ would disturb official action, or create disorder or confusion, it may be denied; and this is so even where the petitioner has a clear legal right for which mandamus would be an appropriate remedy."

Numerous cases are cited supporting the text. The third headnote to *Spurier* v. *Neumiller*, 37 Cal. App. 683, 174 P. 338, which reflects the opinion of the court, is:

"Mandamus will not lie where its effect would be inequitable or unjust as to third persons, or will introduce confusion, or will not promote substantial justice."

The second headnote to *Sheffield* v. *Fountain*, 101 Okl. 168, 224 P. 339, is:

"In awarding or denying writs of mandamus, courts exercise judicial descretion, and are governed by what seems necessary and proper to be done in the particular instance, for the attainment of justice, and, in the exercise of such discretion, may, in view of the consequences attendant upon the issuance of the writ, refuse the same, though the petitioner has a clear legal right, for which mandamus is an appropriate remedy."

We conclude that under all of the facts in this case Logan City, if the levy of the tax is illegal, is liable for the payment of the warrants held by respondents, that it would of necessity result in confusion to now compel a new levy to be made, and that no injustice or harm can result to respondents by a denial of the writ.

For such reasons, the judgment of the district court is reversed, and the case is remanded to the district court, with directions to dismiss the petition. No costs will be allowed either party in this appeal.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.