Thomas A. HENRETTY, Cecil L. and Ann V. Buzzo, Carol D. Maynes, and Rosedith Nielsen, Plaintiffs and Appellees,

v.

MANTI CITY CORPORATION, Defendant and Appellant.

No. 880434.

Supreme Court of Utah.

Feb. 9, 1990.

Rehearing Denied March 15, 1990.

As Amended June 4, 1990.

Paul R. Frischknecht, Manti, for defendant and appellant.

Glen J. Ellis, Provo, for plaintiffs and appellees.

ZIMMERMAN, Justice:

Manti City Corporation ("the City") appeals from the grant of a motion for summary judgment in favor of Thomas Henretty, Cecil and Ann Buzzo, Carol Maynes, and Rosedith Nielsen (collectively referred

to as "the challengers"). The district court ruled that the City's creation of a special improvement district was invalid due to the City's failure to file with the Sanpete County Recorder's Office a notice of intention and resolution to create a special improvement district, as required by section 10–16–7(5) of the Code. Utah Code Ann. § 10–16–7(5) (1986) (amended 1988). On appeal, the City argues that this violation of the statute was not egregious enough to deprive the district of jurisdiction to assess the property within it for the improvements made. We agree and reverse.

During the summer of 1987, the Manti City Council undertook to create a special improvement district in order to widen and improve 500 North Street to provide parking for the Manti City Cemetery, the Sanpete County Fairgrounds, the Sanpete County High School, the Church of Jesus Christ of Latter Day Saints ("LDS") Seminary, and the LDS church park, all of which front on the north side of the street.

The challengers live within the proposed district boundaries on the south side of the street opposite the various public and church facilities. There are a total of eleven property owners on 500 North Street. The four property owners on the north side of the street own a majority of the front footage within the district and are either public or nonprofit entities.[1]

To place the facts in context, a brief review of the relevant statutory framework is necessary. Utah municipalities are empowered by section 10–16–4 of the Code to levy assessments on property for the purpose of paying for improvements benefiting that property. Utah Code Ann. § 10–16–4 (1986) (amended 1988).[2] In order to impose such an assessment, the governmental entity must first give notice to those affected, stating the purpose of the improvement and the method by which the assessment is to be levied. (Section 10–16–5 of the Code[3] allows for assessments

---

1. There appears to be disagreement on whether a majority of the affected property owners protested the district's formation, but we cannot reach that issue because of the defective cross-appeal and the confused state of the record. *See* page 511 *infra.*

2. Section 10–16–4(2) provides in part:
   (2) For the purpose of making and paying for all or a part of the cost of any of such improvements (including optional improvements), the governing body of a municipality may create special improvement districts within the municipality, levy assessments on the property within such a district which is benefited by the making of the improvements and issue interim warrants and special improvement bonds as provided in this act.
   Utah Code Ann. § 10–16–4(2) (1986) (amended 1988).

3. Section 10–16–5 provides in part:
   (1) Before a special improvement district is created, the governing body shall give notice of its intention to make the improvements and to levy assessments to pay all or a part of the cost of them. The notice shall:
   (a) state the purpose for which the assessments are to be levied[;]
   (b) state the method or methods under which the assessments are proposed to be levied, that is, according to frontage, according to area, according to assessed valuation, according to lot, according to number of connections, or by any combination of these methods[;]
   (c) describe the district . . . [;]

(d) in a general way, describe the improvements proposed to be made showing the places the improvements are proposed to be made and the general nature of the improvements. . . . [;]
(e) state the estimated cost of the improvements as determined by the engineer of the municipality. . . . [;]
(f) state that it is proposed to levy assessments on property in the district to pay all or a portion of the cost of the improvements according to the benefits to be derived by the property[;]
(g) designate the time within which and the place where protests shall be filed and the time and place at which the governing body will conduct a public hearing to consider these protests[;]
(h) state the method for determining the necessary number of protests required to be filed under Subsection 10–16–7(3).
(2) The notice may contain such other information as the governing body shall determine to be appropriate, including the amount or proportion of the cost of the improvements to be paid for by the municipality or from sources other than assessments, the estimated amount of each type of assessment for the various improvements to be made according to the method of assessment chosen by the governing body and provisions for any optional improvements. The failure to include this information shall in no event be deemed jurisdictional or a defect preventing the municipality from proceeding with the special improvement district. The inclusion of any

according to area, valuation, or frontage.) The notice must also describe the boundaries of the district and the improvements to be made and must state the cost, as well as when and where protests may be filed. Utah Code Ann. § 10–16–5(1) (1986) (amended 1988). The municipality must publish this notice of intention to form a district in the local newspaper and then mail a copy to each owner of property within the proposed district. Utah Code Ann. § 10–16–6 (1986).[4] The governing body of the municipality must then hold a public hearing to consider protests against the district's formation. No district can be created if half of the affected owners, measured by front footage or by area, oppose its formation. Utah Code Ann. § 10–16–7 (1986) (amended 1988).

If, after giving the required notice, receiving the protests, and holding a hearing, the governing body votes to create a district, it must file a copy of the notice of intention and of the resolution creating a special improvement district with the county recorder's office within five days of its decision. Utah Code Ann. § 10–16–7(5) (1986) (amended 1988).[5] After creation of

---

permitted information shall not be considered a limitation on the municipality from subsequently changing its plans in regard to any of the information so set forth.

Utah Code Ann. § 10–16–5 (1986) (amended 1988).

4. Section 10–16–6 provides in part:

The notice of intention shall be published in a newspaper published in the municipality, or if there is no newspaper published in the municipality, then in a newspaper having general circulation in the municipality, except that in cities of a third class or towns where there is no newspaper published in the city or town, the governing body may provide that the notice of intention be given by posting in lieu of publication of this notice. If the notice is published, it shall be published once during each week for four successive weeks, the last publication to be at least five days and not more than 20 days prior to the time fixed in the notice as the last day for filing of protests.... In addition, not later than 10 days after the first publication or posting of the notice, it shall be mailed, postage prepaid: (1) addressed to each owner of property to be assessed within the special improvement district at the last known address of that owner[,] using for this purpose the names and addresses appearing on the last completed real property assessment rolls of the county in which the property is located; and (2) addressed to "owner" at the street number of each piece of improved property to be assessed.

Utah Code Ann. § 10–16–6 (1986).

5. Section 10–16–7 of the Code provides in part:

(1) Any person who is the owner of property to be assessed in the special improvement district described in the notice of intention shall have the right, within the time designated in the notice, to file in writing a protest to the creation of the special improvement district or making any other objections relating to it. The protest shall describe or otherwise identify the property owned by the person or persons making the protest.

(2) On the date and at the time and place specified in the notice of intention, the governing body shall in open and public session consider all protests so filed and hear all objections relating to the proposed special improvement district....

(3)(a) After this consideration and determination, the governing body shall adopt a resolution either abandoning the district or creating the district either as described in the notice of intention or with deletions and changes made as authorized in Subsection (1); but the governing body shall abandon the district and not create the same if the necessary number of protests as provided in this Subsection (3) have been filed on or before the time specified in the notice of intention for the filing of protests after eliminating from such filed protests: (i) protests relating to property or relating to a type of improvement which has been deleted from the district and (ii) protests which have been withdrawn in writing prior to the conclusion of the hearing. For purposes of this section, the necessary number of protests shall mean the aggregate of the following:

(b) protests representing one-half of the property to be assessed in cases where an assessment is proposed to be made according to frontage;

(c) protests representing one-half of the area of the property to be assessed where an assessment is to be made according to area;

(d) protests representing one-half of the assessed valuation of the property to be assessed where an assessment is proposed to be made according to assessed valuation;

(e) protests representing one-half of the lots to be assessed where an assessment is proposed to be made according to lot; or

(f) protests representing one-half of connections to be assessed where an assessment is proposed to be made according to number of connections.

(4) If less than the necessary number of protests are filed by the owners of the property to be assessed, the governing body shall have jurisdiction to create the special im-

the district but before the assessment is levied, a board of equalization and review must give notice of the assessment list (the list of those to be taxed and the amount of the tax) and hold hearings to consider any challenges to the assessment. Utah Code Ann. § 10–16–17 (1986) (amended 1988).[6] Any assessment levied must be equal and uniform according to benefits received. Utah Code Ann. § 10–16–16 (1986) (amended 1988).[7]

On several occasions, Manti City published notice of its intention to create the district, as required by the Code. The City later sent notice of a protest hearing to all affected property owners. Each of the challengers then filed a written protest. At the protest hearing and at a subsequent Manti City Council meeting, the challengers personally or by representative objected to the creation of the special improvement district. The Manti City Council determined that a majority of the property owners had not protested the creation of the special improvement district and passed a resolution setting up the district. The City did not, however, file a copy of the notice of intention and the resolution creating the district with the county recorder's office within five days following the adoption of the resolution, as required by section 10–16–7(5) of the Code. The improvements were nonetheless undertaken and eventually completed.

The challengers filed suit in February of 1988. In their motion for summary judgment, the challengers claimed that the improvement district lacked jurisdiction to assess their property because it had not been properly organized. They also claimed that the City improperly listed the LDS church as a property holder within the district subject to the assessment and, had it not done so, the protesting owners would have represented a majority of the land fronting on the improvements. The district court held that procedural defects in the establishment of a special improvement district voided the district's formation *ab initio*, leaving it powerless to act. Summary judgment was therefore granted to the challengers on this issue.

On the second claim, the court rejected the challengers' contention that owners of

---

6. Section 10–16–17 provides in part:

(1) Before an assessment is levied, an assessment list shall be prepared designating each parcel of property proposed to be assessed and the amount of the assessment apportioned to this property as provided in this chapter. Upon completion of the assessment list, the governing body shall appoint a board of equalization and review consisting of three or more of the members of the governing body or at the obligation of the governing body of any city, consisting of the city recorder or designee, city engineer or public works director or a designee from the city attorney's office, and shall give public notice of the completion of the assessment list and of the time and place of the holding of public hearings relating to the proposed assessments. Appeal from a decision of a city board of equalization and review may be taken to the governing body of the city within 60 days. Utah Code Ann. § 10–16–17 (1986) (amended 1988).

7. Section 10–16–16 provides:

Assessments shall be levied on all blocks, lots, parts of blocks and lots, tracts or parcels of property bounding, abutting upon or adjacent to the improvements or which may be affected or specially benefited by the improvements to the extent of the benefits to such property by reason of the improvements. Assessments may be to the full depth of such property or to such depth as the governing body may provide. Assessments shall be equal and uniform according to the benefits received. Assessments may be according to area or frontage or assessed valuation or, in the case of water supplied for irrigation purposes, according to the amount of water used, all as the governing body may consider fair and equitable. Different improvements in a special improvement district may be assessed according to different methods. An allowance shall be made for corner lots so that they are not assessed at full rate on both streets. Utah Code Ann. § 10–16–16 (1986) (amended 1988).

provement district and proceed with the making of the improvements.

(5) Should the governing body create the special improvement district, it shall, within five days from the date of creating the district, file a copy of the notice of intention and the resolution creating the district, as finally approved, in the county recorder's office in the county in which the district is located. The county recorder shall maintain a public file of all special improvement districts created under this chapter. Utah Code Ann. § 10–16–7 (1986) (amended 1988).

a majority of the property had protested the formation of the special improvement district. To reach this conclusion, the court first found that the property of the LDS church was not exempt from special improvement district levies. This finding permitted the court to count the church as a nonprotester. The court acknowledged that if the church had been found exempt from the district's taxes, a majority of the property owners, as measured by their front footage on the street, would have protested the district's formation and it would have been invalidly formed.

On appeal, Manti City concedes that it failed to file a copy of the notice of intention and of its resolution creating a special improvement district. It contends, however, that this failure is a minor irregularity and does not defeat the creation of the district. The challengers not only support the trial court's ruling on this point, but have attempted to attack by cross-appeal the lower court's ruling that the LDS church properties were taxable and its consequent holding that the district's formation was not opposed by owners of a majority of the assessable front footage.

■ We first address Manti City's argument that the failure to file a copy of the notice of intention and the resolution with the county recorder, as required by section 10–16–7(5) of the Code, is not fatal to its authority to impose an assessment to pay for the improvements. Because this appeal is from a grant of summary judgment, the facts are not in dispute. The issue of whether the City's failure to file voids the creation of the district is a question of law.

Therefore, we accord the trial court's conclusions no particular deference and review them for correctness. E.g., City of West Jordan v. Utah State Retirement Bd., 767 P.2d 530, 532 (Utah 1988); Scharf v. BMG Corp., 700 P.2d 1068, 1070 (Utah 1985).

■ There are two lines of Utah authority pertinent to this question. One line holds that procedural defects in the formation of the district or the levying of an assessment will render the district void;[8] the other holds that such defects do not.[9] At first blush, the language of these two lines of cases appears inconsistent. However, further analysis allows a distinction to be drawn between those cases where (i) the irregularity at issue is characterized as affecting the property owner's ability either to know of or to protest the creation of a special improvement district and (ii) the irregularity at issue is characterized as having no unfair or inequitable impact on the affected property owner. See Utah Code Ann. § 10–16–28 (1986).[10]

We conclude that the present case falls within the second line of authority and that under the stipulated facts of this case, the failure to file a copy of the notice of intention and the resolution does not deprive the district of jurisdiction to levy an assessment. Here, there is no question that the challengers had sufficient notice of the creation of the district and of the proposed improvements. They also had an opportunity to exercise their right to protest. Further, there is no showing that the City's failure to file the required notice within five days after the passage of the resolu-

---

**8.** The trial court relied upon Lewis v. Kanab City, 523 P.2d 417, 418–19 (Utah 1974). There, Kanab City violated the terms of section 10–16–6 of the Code by not providing notice to each affected property owner by mail. The city also failed to comply substantially with section 10–16–17 of the Code by not providing for a board of equalization and review in the ordinance creating the special improvement district. We held that these omissions made the subsequent adoption of a resolution establishing the district ineffective. Other cases also holding that failure to comply with the statutory requirements were fatal to the formation of special taxing districts include Jones v. Foulger, 46 Utah 419, 424–25, 150 P. 933, 934–35 (1915) (failure to give actual notice of intention that plaintiffs' property would be included in district); Ryberg v. Lundstrom, 70 Utah 517, 524–25, 261 P. 453, 456 (1927) (failure to appoint a board of equalization before passage of ordinance establishing district and to give notice of a meeting of the board would have made the levy of the tax illegal).

**9.** These cases hold that nothing can destroy jurisdiction after the special taxing district has been created, unless there is some intervening defect in the notice of intention or protest meetings. Stott v. Salt Lake City, 47 Utah 113, 120–21, 151 P. 988, 990–91 (1915) (noncompliance with nonjurisdictional requirements is not sufficient to enjoin the assessment and collection of taxes); Acord v. Salt Lake City, 73 Utah 542, 551, 275 P. 1103, 1107 (1929) (when jurisdiction to create a special improvement district has been acquired, mere irregularities arising afterwards do not nullify jurisdiction); Salt Lake & Utah R. Co. v. Payson City, 66 Utah 521, 528, 244 P. 138, 140 (1926) (jurisdiction cannot be destroyed by mere irregularities where notice of intention was properly published and challenging party failed to sufficiently protest levy).

**10.** Section 10–16–28 provides in part:

(1) No assessment or proceeding in a special improvement district shall be declared void or set aside in whole or in part in consequence of any error or irregularity which

tion establishing the district in any way disadvantaged the challengers. We, therefore, conclude that that oversight should be viewed as only a technical defect.

It is true that the City's failure to file might have adversely impacted a subsequent purchaser who took without notice of the assessment, but we need not reach the question of the district's ability to collect from such a person because it is not presented by the facts. In other circumstances, a failure to file a copy of the notice of intention and of the resolution might be fatal. Here it was not.

■ We next address the challengers' attempt to cross-appeal from the trial court's finding that it was not improper to count the LDS church as a nonobjecting property owner because its land was assessable. As noted earlier, had the church not been included as a property owner, it appears that more than one-half of the owners did protest the formation of the district. However, we cannot reach that issue.

Rule 4(d) of the Rules of the Utah Supreme Court explicitly requires that a notice of cross-appeal be timely filed. There is no record of such a filing.[11] Absent a cross-appeal, a respondent may not attack the judgment of the court below. "[I]f a respondent desires to attack the judgment and change it in his favor, he must timely file a cross-appeal...." *Terry v. Zions Coop. Mercantile Inst.*, 617 P.2d 700, 701–02 (Utah 1980); *see also Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 613 (Utah 1982); *Halladay v. Cluff*, 739

P.2d 643, 644–45 (Utah Ct.App.1987), *cert. denied*, 765 P.2d 1277 (Utah 1987). For this reason, we decline to consider the merits of the challengers' purported cross-appeal.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, Associate C.J., having disqualified himself, does not participate herein.

---

does not go to the equity or justice of the assessment or proceeding. However, any party feeling aggrieved by an assessment or proceeding and who has not waived his [or her] objections thereto as provided in § 10–16–7 or § 10–16–17 shall have the right to commence a civil action against the municipality to enjoin the levy or collection of the assessment or to set aside and declare unlawful the proceedings.

Utah Code Ann. § 10–16–28 (1986).

**11.** On petition for rehearing, appellees contend that they did file a notice of cross-appeal and this court should consider the taxability of the LDS church property. Rule 4(d) of the Rules of the Utah Supreme Court (renamed as of April 1, 1990, the Utah Rules of Appellate Procedure) states:

If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the

time otherwise prscribed by Paragraph (a) of this rule, whichever period last expires.

Rule 4(a) states that "the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from." Appellees did not comply with this rule. They apparently furnished appellant's counsel with a document dated October 24, 1988, captioned "In the Utah Supreme Court" and entitled "Notice of Intent to File Counter–Appeal." A copy was attached to the petition for rehearing. That copy, however, does not reflect a filing stamp, and no such document appears in the record. Apparently, it was not filed with the clerk of the district court or with this court. In addition, the document is dated seventeen days after the expiration of the fourteen-day period specified in rule 4(d) and twelve days after the expiration of the thirty-day period specified in rule 4(a). Appellees have done nothing else to attempt to preserve the issue for appeal. Under the plain language of rule 4, this court does not have jurisdiction to hear the cross-appeal.