**STATE of Utah, Plaintiff and Petitioner,**

v.

**Jeffery Earl SOUTH and Dianna South, Defendants and Respondents.**

No. 950066.

Supreme Court of Utah.

Aug. 30, 1996.

Jan Graham, Atty. Gen., Todd A. Utzinger, Carol Clawson, Asst. Attys. Gen., Salt Lake City, and Patrick B. Nolan, Jeffrey R. Burbank, Scott L. Wyatt, Logan, for plaintiff.

Nathan D. Hult, Logan, and Jensie L. Anderson, ACLU, Salt Lake City, for defendants.

STEWART, Associate Chief Justice:

We granted the State's petition for a writ of certiorari to review the issue of whether a successful party in the trial court must file a cross-appeal to argue a ground for affirmance other than the ground relied on by the trial court. In the district court, Jeffery Earl South and Dianna South moved to suppress evidence of contraband seized at their residence in Logan, Utah, asserting that the warrant under which the evidence was seized did not authorize a search of their residence. The trial court agreed but denied their motion on the basis of the "plain smell" exception to the warrant requirement. The Souths appealed to the Court of Appeals, which reversed the trial court's ruling on the

"plain smell" issue. On that appeal, the State argued that the trial court had erred in holding the warrant invalid, but because the State had failed to cross-appeal the trial court's ruling on that issue, the Court of Appeals refused to consider it as an alternative ground for affirmance of the district court's judgment. We reverse the Court of Appeals.

## I. PROCEDURAL BACKGROUND

On March 15, 1992, a Logan City police detective went to the Souths' residence to investigate a reported theft of a cellular phone. When Jeffery South answered the door, the detective smelled the odor of burnt marijuana emanating from his residence and from his clothing. Shortly thereafter, the detective obtained a search warrant. The warrant expressly permitted a search of the persons at the Souths' address but did not authorize a search of the premises.[1] The detective returned to the Souths' residence accompanied by three other officers. A search of the premises led to the confiscation of controlled substances and drug paraphernalia. Prior to trial, defendants moved to suppress this evidence, asserting that the warrant was defective because it authorized a search of the persons present but not of the premises. The trial court agreed that the warrant was "defective"[2] but ruled that the evidence was nevertheless admissible under the "plain smell" exception to the Fourth Amendment's warrant requirement. *State v. South*, 885 P.2d 795, 797 (Ct.App.1994), *cert.*

*granted*, 899 P.2d 1231 (Utah 1995); *see also State v. Naisbitt*, 827 P.2d 969, 972–73 (Utah Ct.App.1992) (describing plain smell doctrine).

The Souths appealed to the Court of Appeals. The State did not cross-appeal but instead argued in its brief that the trial court had erred in holding the search warrant invalid. The Court of Appeals refused to address this argument, holding that the State must raise the issue on cross-appeal rather than simply presenting it as an argument in a responsive brief. *South*, 885 P.2d at 798.

## II. DISCUSSION

The question we address here is a narrow one: whether a responding party must file a cross-appeal or a cross-petition to raise an argument which was also raised below and which is offered merely as a ground for affirming the decision below.[3] Although we are not bound by federal court decisions on this issue, to the extent that we find a federal approach to the problem useful and persuasive, we are free to adopt that approach. *Plumb v. State*, 809 P.2d 734, 741 (Utah 1990). The seminal case treating the issue of when a cross-appeal must be filed is *Langnes v. Green*, 282 U.S. 531, 538–39, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931). In brief, the *Langnes* doctrine requires litigants to cross-appeal or cross-petition if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their opponent. *Id.*;

---

1. The State contends that this limitation in the scope of the warrant was merely the result of a technical oversight.

2. The trial court employed this term in its memorandum decision, and the Court of Appeals generally noted that the trial court had found the warrant to be "invalid." These terms, however, may be somewhat misleading. It does not appear that the trial court found there was an insubstantial basis for issuing the warrant. Rather, according to the trial court, the express terms of the warrant "through inadvertence" did not permit as extensive a search as was actually conducted. Thus, it appears the actual basis for the trial court's ruling was that the search exceeded the scope of a valid warrant.

3. We do not here address the question of whether an appellee may raise an argument in defense of the lower court's judgment when that argu-

ment was not presented in the lower court. We do note, however, that our previous opinions on that question have been somewhat inconsistent. *See, e.g., Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894–95 (Utah 1988) (applying argument raised for first time on appeal to affirm lower court's decision); *American Coal Co. v. Sandstrom*, 689 P.2d 1, 4 (Utah 1984) (holding that argument offered in defense of decision below had been waived when not raised below); *L & M Corp. v. Loader*, 688 P.2d 448, 449–50 (Utah 1984) (refusing to address argument offered on appeal in defense of lower court's decision where that argument was not raised in pleadings or argued by parties below); *Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 276 (Utah 1982) (holding that appellate court, in affirming trial court's decision, may rely in part on a ground not presented to trial court).

*Terry v. Zions Coop. Mercantile Inst.*, 617 P.2d 700, 701 (Utah 1980). Conversely, if appellees or respondents merely desire the affirmance of the lower court's judgment, they need not, and should not, cross-appeal or cross-petition. "The practical justification for the rule is that a party satisfied with the action of a lower court should not have to appeal from it in order to defend a judgment in his or her favor on any ground no matter what an adversary does." Robert L. Stern et al., *Supreme Court Practice* 364 (7th ed. 1993). Nor should a party be allowed to employ its adversary's appeal or petition as a vehicle to gain a greater benefit than that granted below. Unnecessary cross-appeals also multiply the number of briefs filed and lead to confusion of the issues presented. *See, e.g., Pearl v. Keystone Consol. Indus., Inc.*, 884 F.2d 1047, 1053 (7th Cir.1989); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir.1987). The *Langnes* rule is thus grounded in fairness, common sense, and judicial efficiency.[4]

Before the Court of Appeals, the State argued that the omission in the warrant of authorization to search the premises was a technical defect not requiring suppression. Even though the trial court had expressly rejected this contention in its memorandum decision, the State argued it on appeal as an alternate ground for affirming the trial court's denial of the motion to suppress. The State relied on the principle that appellate courts may "affirm the trial court's decision to admit evidence on any proper grounds, even though the trial court assigned another reason for its ruling." *State v. Gallegos*, 712 P.2d 207, 209 (Utah 1985); *see also O'Neal v. Division of Family Servs.*, 821 P.2d 1139, 1141 (Utah 1991); *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894–95 & n. 2 (Utah 1988); *State v. Bryan*, 709 P.2d 257, 260 (Utah 1985); *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982); *Allphin Realty, Inc. v. Sine*, 595 P.2d 860, 861 (Utah 1979). *But see Henretty v. Manti City Corp.*, 791 P.2d 506, 511 (Utah 1990); *American Coal Co. v. Sandstrom*, 689 P.2d 1, 4 (Utah 1984).[5]

**4.** Since deciding *Langnes,* the United States Supreme Court has articulated a few clarifications or exceptions. The exceptions, however, relate only to a limited number of discrete circumstances, such as claims of improper venue or untimeliness, and to the rare occasion when, although an appellee does not request a change in the lower court's decision, the appellee's argument would nevertheless logically require that the lower court's decision be modified. *See* Robert L. Stern et al., *Supreme Court Practice* 364–65 (7th ed. 1993). None of these circumstances applies to this case, and the Souths' reliance on them is misplaced.

**5.** *Henretty* treated the issue of whether Manti City had properly created a special improvement district for a designated section of highway. The plaintiffs in the case opposed the city's proposed "improvements." Before the district court, the plaintiffs argued both a substantive and a procedural ground as a basis for depriving the proposed improvement district of jurisdiction to act. The district court rejected the substantive ground but accepted the procedural argument and ruled that the improvement district had not been properly constituted. Manti City appealed, and the plaintiffs raised the substantive argument as part of a purported cross-appeal. In so doing, the plaintiffs relied entirely on their claim of a timely cross-appeal and did not present the substantive ground as an alternate ground for decision. This Court reversed the trial court's ruling on the procedural issue and then considered the plaintiffs' cross-appeal. *Henretty,* 791 P.2d at 510–11. Even though the plaintiffs were not seeking to

change the outcome in the trial court, we refused to consider the substantive argument because the cross-appeal had not been timely filed.

*Sandstrom* was a procedurally complex workers' compensation case. In short, the issue on writ of review to this Court was whether the Second Injury Fund was required to provide reimbursement to the State Insurance Fund for certain payments the latter had made to Sandstrom. The Industrial Commission, affirming an administrative law judge's decision, ruled that the Second Injury Fund was not liable for reimbursement. On review before this Court, the Industrial Commission was joined as a defendant. We reversed. *Sandstrom,* 689 P.2d at 3–4. In so doing, we refused to consider the Industrial Commission's statute of limitations argument, which it offered as an alternate ground for affirming its decision. However, the Second Injury Fund never offered that argument on its own behalf, and we held that failure to present it below constituted waiver. *Id.* at 4. In dicta, we then stated that the issue could not have been raised without a cross-appeal. *Id.* Thus, both *Henretty* and *Sandstrom* adopted holdings primarily based on the failure of the appropriate party to raise an argument at the appropriate time rather than on this Court's ability to address arguments rejected by a lower adjudicator.

To the extent those cases suggested the necessity of a cross-appeal or a cross-petition where an argument is raised and rejected below and no change to the judgment is sought, we disavow that implication.

The Court of Appeals ruled that because "defendants in this case are challenging the legality of the warrantless search—a question quite different than the validity of the warrant," the State was raising an argument that was not "related to the ruling being appealed." *South,* 885 P.2d at 798. The Court of Appeals thus apparently presumed that the trial court's rulings on the "plain smell" issue and the validity of the warrant constituted distinct judgments or decisions and the *Langnes* doctrine therefore could not apply.

We disagree. The Court of Appeals' reasoning simply becomes mired in the semantics of what it labels a "ruling" as opposed to a "ground" for decision. " 'Failure to observe the distinction between a contention, argument, or theory, on the one hand, and a claim on the other, is responsible for much of the confusion in the cases on the subject of the necessity for cross-appeals.' " Robert L. Stern et al., *Supreme Court Practice* 767 (quoting 9 James W. Moore & Bernard J. Ward, *Moore's Federal Practice* ¶ 204.11[3], at 934 (1973)). In determining what constitutes a separate ground for decision, it is not the applied terminology that is important, but rather the substance of the trial court's decision. *Langnes,* 282 U.S. at 538–39, 51 S.Ct. at 246. A judgment or decision [6] may be based on any number of subsidiary rulings or grounds, but as long as that judgment or decision produces a distinct and tangible result, it is only the result which requires an appeal, a cross-appeal, a petition for certiorari, or a cross-petition.[7] *Id.* In short, it is the *outcome* upon which the focus must be brought to bear, not the reasoning employed to reach the outcome.

In this regard, it is helpful to examine the result that each party was seeking in this case. The Souths desired suppression of the evidence, and the State desired that the evidence be admitted. To prevail, the Souths had to convince the trial court to reject all the State's potential justifications for the search. The State, on the other hand, needed only to demonstrate one valid, independently supportable justification for the search. As a practical matter, it was of little consequence to either the Souths or the State that the trial court rejected the warrant argument but accepted the "plain smell" argument, rather than the other way around. The result was the same, and in responding to the Souths' appeal, the State was not seeking to change it. The State merely offered another line of reasoning which, if accepted, would result in precisely the same outcome as that originally granted by the trial court: admission of the contested evidence.

We therefore reverse and remand to the Court of Appeals for consideration of the State's proffered alternative ground for affirming the trial court's ruling.

ZIMMERMAN, C.J., HOWE, DURHAM and RUSSON, JJ., concur.

---

**6.** The flexibility of these terms, depending upon the legal context, does indeed produce a certain degree of confusion. The term "judgment," for instance, has been employed variously to describe interlocutory decisions, verdicts, and verdicts accompanied by remedies or punishments. It thus becomes all the more important to focus on the rationale behind the governing rule rather than according any talismanic significance to the words employed.

**7.** Of course we do not here imply that the *Langnes* doctrine in any way restricts our discretionary power, when we grant a petition for certiorari, to limit the issues that will be treated.