ORME, Judge:
 

 Defendants appeal their convictions for possession of marijuana in a drug-free zone and possession of drug paraphernalia in a drug-free zone, both class A misdemeanors. They contend the trial court erred in denying their motion to suppress evidence which they claim was seized in violation of their state constitutional rights. Because we hold that article I, section 14 of the Utah Constitution does not prohibit the warrantless search and seizure of garbage left for streetside collection, we affirm.
 

 FACTS
 

 In the early morning hours of June 8, 1994, Sergeant Jerry Harper of the Provo Police Department went to the home of defendant Patricia Smith and obtained two garbage cans that were sitting at the side of the street in front of her home. The garbage cans were provided by Provo City and marked with the house number in white stenciled writing, thus indicating to Officer Harper that the garbage cans facilitated garbage removal for those residing at the home, including defendant Smith; her companion, defendant Brent Jackson; and her daughter, defendant Raquel Nielsen. Officer Harper removed the two cans from the curb and took them to the Provo Police Department where the contents of the cans were inspected.
 

 As a result of his search of both garbage cans, Officer Harper found evidence of illegal drug use and possession, including marijuana stems and seeds, a marijuana cigarette, a small amount of marijuana indicative of personal use, and “Zig-Zag” papers used for rolling marijuana cigarettes. These items were found inside a garbage can containing, among other items, a utility bill in the name of defendant Jackson and a phone bill in the names of both Jackson and Smith.
 

 On the basis of this and other information, the police sought a search warrant for defendants’ home that same day. In addition to setting forth the results of the garbage search, the affidavit in support of the search warrant included two prior incidents involving the defendants and drug-related activity. One such incident occurred on April 13,1994, when several unidentified men entered defendants’ home without permission and held defendants captive for several hours demanding drugs and money. Nothing in the affidavit indicated why the men thought they would find drugs there or whether drugs were actually obtained by the intruders.
 
 [1]
 
 
 *547
 
 The second incident occurred on May 3,1994, when defendant Smith pleaded guilty to possession of marijuana and possession of drug paraphernalia, which occurred in January 1993 at a third party’s residence in Orem.
 

 The requested warrant was issued and executed on June 8, 1994. Based upon the evidence of drugs and drug paraphernalia found during this search of their residence, defendants were charged with various drug-related felonies and class A misdemeanors. Defendants jointly moved to suppress the evidence obtained from the search, which motion was denied. Defendants then entered conditional guilty pleas to class A misdemeanor possession of marijuana and class A misdemeanor possession of drug paraphernalia, both in a drug-free zone, with each defendant reserving the right to challenge the trial court’s ruling on the earlier suppression motion. On October 10, 1995, all defendants were sentenced on each count to one year in jail and a $2500 fine, but the sentences were suspended pending successful completion of thirty-six months probation. This appeal followed.
 

 ISSUES
 

 Defendants raise two issues on appeal: (1) whether the affidavit in support of the search warrant was sufficient to support the magistrate’s determination of probable cause and (2) whether article I, section 14 of the Utah Constitution prohibits the warrantless search of a citizen’s garbage left for curbside collection.
 

 STANDARDS OF REVIEW
 

 Our review of the affidavit in support of the search warrant focuses on whether the “magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed.”
 
 State v. Collard,
 
 810 P.2d 884, 885 (Utah.Ct.App.),
 
 cert, denied,
 
 817 P.2d 327 (Utah 1991). Accordingly, we review the affidavit in “ ‘ “its entirety and in a common sense fashion,” ’ ” according deference to the magistrate’s determination.
 
 State v. Thurman,
 
 846 P.2d 1256, 1260 (Utah 1993) (citations omitted).
 

 The trial court’s determination that article I, section 14 of the Utah Constitution does not recognize a reasonable expectation of privacy in a Utah citizen’s garbage left for collection outside the curtilage of a home presents a question of law, which we review for correctness.
 
 State v. Anderson,
 
 910 P.2d 1229,1232 (Utah 1996).
 

 SUFFICIENCY OF THE AFFIDAVIT
 

 Defendants list a number of reasons why the affidavit was insufficient to support the magistrate’s determination of probable cause, most of which relate to whether the factual information in the affidavit was stale or irrelevant. Primarily because we do not view bits and pieces of the factual information contained in the affidavit in isolation, but rather view the affidavit in its totality, we are not persuaded by defendants’ arguments.
 

 Officer Harper’s affidavit contains twelve paragraphs. In essence, these twelve paragraphs set forth information regarding (1) the affiant’s training and qualifications as a police officer in recognizing narcotics and the related paraphernalia, (2) the past drug activity of defendants, (3) Provo’s garbage collection system, (4) the search of defendants’ garbage cans, and (5) the resulting evidence from the garbage search. Taken together, this information establishes an adequate basis on which the magistrate could find probable cause to believe that drugs and/or drug paraphernalia would be found in the residence.
 

 Defendants argue that the facts set forth in the affidavit fail to dispel the possibility that the contraband was placed in the garbage cans by strangers or neighbors while the cans sat at the curb. Paragraph seven of the affidavit, however, states that Officer Harper found the contraband amongst garbage that included a utility bill in the name of defendant Jackson and a phone bill in the names of both Jackson and Smith. This fact tends to suggest that the marijuana came from inside defendants’ home, and was discarded by defendants, along with other refuse from the home, rather than by some unknown passer-by or neighbor.
 

 
 *548
 
 Defendants also argue that the affidavit failed to indicate when the containers were taken to the street, arguing that the contraband could have been in defendants’ garbage can for weeks or months before defendants took the garbage to the curb for collection. Defendants argue that this potential staleness seriously undercuts the magistrate’s determination of probable cause. Viewing it in a common sense fashion, however, the affidavit sufficiently dispels any substantial possibility of staleness in this regard. Although the affidavit does not state the specific day of the week when the city’s garbage collectors were scheduled to dispose of the garbage at the residence, the magistrate could fairly infer, given the fact of weekly collection, that the contraband had not been lying around for longer than one week. Such potential lapse of time was not significant enough to bar the magistrate from concluding there was probable cause to believe that drugs would be found inside defendants’ home.
 
 See State v. Thurman,
 
 846 P.2d 1256, 1260 (Utah 1993) (“The concern [with stale information] is whether so much time has passed that there is no longer probable cause to believe that the evidence is still at the targeted locale.”).
 

 Defendants also argue that the April 1994 forced break-in incident and the prior criminal conviction of defendant Smith constitute stale and irrelevant information, which should not have been considered by the magistrate in making his probable cause determination. We largely agree with defendants in this respect. However, we are persuaded that the magistrate would have found probable cause even absent any information about the April 1994 incident and Smith’s prior conviction. Thus, defendants’ staleness argument, even if well-taken, is not dispositive. We therefore conclude that the affidavit contained sufficient facts to support the magistrate’s determination of probable cause.
 

 STATE CONSTITUTIONAL ISSUE
 

 Defendants concede that under the Fourth Amendment to the federal constitution, a person has no reasonable expectation of privacy in one’s garbage set out for collection on the street, outside the curtilage of a home, and thus no Fourth Amendment right to be free from the search of such garbage by law enforcement personnel.
 
 See California v. Greenwood,
 
 486 U.S. 35, 39-41, 108 S.Ct. 1625,1628-29,100 L.Ed.2d 30 (1988). Nonetheless, defendants argue that we may find greater protection of individual rights under our state constitution than is provided by the federal constitution. They urge us to give a more expansive interpretation of article I, section 14 of the Utah Constitution, which parallels the Fourth Amendment to the federal constitution.
 
 [2]
 

 Initially, we commend defendants’ counsel in “heedpmg] the call” by Utah’s appellate courts “to more fully brief and argue the applicability of the' state constitution.”
 
 State v. Bobo,
 
 803 P.2d 1268, 1272 (Utah.Ct.App.1990). Counsel’s appellate brief and related oral argument on this issue were thorough and scholarly, and contained the kind of analysis that
 
 Bobo
 
 noted might be helpful in making an argument for an innovative interpretation of the Utah Constitution.
 
 See id.
 
 at 1272-73 n. 5. However, despite counsel’s able handling of this issue at trial and on appeal, we are unpersuaded by defendants’ state constitutional arguments.
 

 In support of their position, defendants cite to the early experience of Utah’s Mormon settlers, who suffered at the hands of federal officials. After persecution in three different states, where the government either ignored or condoned such persecution, the Mormon settlers, including their societal leaders, continued to suffer persecution in Utah at the hands of federal agents, who often searched homes and seized evidence without warrants in an attempt to enforce the antipolygamy laws. In essence, defendants argue that article I, section 14 is a reflection of the early settlers’ feelings of
 
 *549
 
 “hostility and distrust of a government perceived as inimical to their beliefs if not their existence.” According to defendants, the totality of this societal and constitutional history of Utah strongly suggests a heightened appreciation for, and valuation of, the privacy rights in personal effects and, particularly, in the right to be secure in one’s own home. Thus, defendants argue that article I, section 14 of the Utah Constitution should be interpreted by this court to reflect what Utah society would recognize as reasonable, including, apparently, a heightened expectation of privacy in residential garbage even when placed on the street.
 

 In support of their argument, defendants borrow extensively from an article discussing Utah’s unique history in the context of state constitutional analysis.
 
 See
 
 Kenneth R. Wal-lentine,
 
 Heeding the Call: Search and Seizure Jurisprudence under the Utah Constitution, Article I, Section
 
 ⅜ 17 J. Contemp. L. 267 (1991). Contrary to defendants’ generalized argument, the discussion and analysis in the article suggest that the drafters of article I, section 14 were sensitive to the more specific and intrusive practice of nighttime raids by law enforcement officials,
 
 see id.
 
 at 277-78, rather than to law enforcement’s basic search and seizure power. As stated in the article, nighttime raids and searches of settlers’ homes by federal marshals “were not uncommon [in Utah’s early years] and were executed without any showing of particularized need to search at night.”
 
 Id
 
 at 277. Thus, whatever the merit of defendants’ argument in other contexts, we must reject defendants’ argument concerning Utah’s unique history as it relates to searches of residential garbage. Simply stated, there is no articulated or logical link between the unique experience of suspected pioneer polygamists and contemporary society’s notions about municipal garbage collection.
 

 Moreover, we note that when the Utah Supreme Court has interpreted article I, section 14 to provide broader protections than have been recognized under its Fourth Amendment counterpart, it has been due neither to Utah’s unique history nor to any “heightened appreciation and valuation of the privacy rights in personal effects,” as argued by defendants. Rather, it has been for the primary purpose of shielding Utah citizens “from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts.”
 
 State v. Watts,
 
 750 P.2d 1219,1221 n. 8 (Utah 1988).
 

 Thus, on the two most recent occasions in which the Utah Supreme Court has indicated a departure from federal search and seizure jurisprudence, it has been for the purpose of establishing a more workable rule for police and trial courts than exists under confusing federal case law.
 
 See State v. Thompson,
 
 810 P.2d 415, 416-17 (Utah 1991) (seizure of bank records);
 
 State v. Larocco,
 
 794 P.2d 460, 469 (Utah 1990) (plurality opinion) (automobile searches).
 

 In the instant case, defendants have failed to point to any similar significant inconsistencies or confusion surrounding garbage searches under the Fourth Amendment that would justify an independent state constitutional departure in this area of search and seizure law. On the contrary, as hereafter shown, the federal case law is clear, sensible, and uniform in finding no reasonable expectation of privacy in garbage placed on the street for collection.
 

 As construed by the United States Supreme Court, the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection beyond the curtilage of a home.
 
 Greenwood,
 
 486 U.S. at 37, 108 S.Ct. at 1627. In applying the two-pronged inquiry announced in
 
 Katz v. United States,
 
 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring),
 
 [3]
 
 the Court cited two reasons for its holding: (1) the garbage at issue was left on the side of the street, exposing the garbage to public access, and (2) the garbage was placed on the side of the street by the defendants “for the express purpose of conveying
 
 *550
 
 it to a third party, the trash collector, who might himself have sorted through [the defendants’] trash or permitted others, such as the police, to do so.”
 
 Greenwood,
 
 486 U.S. at 40,108 S.Ct. at 1628-29.
 

 According to the Court in
 
 Greenwood,
 
 its decision was consistent with
 
 pre-Greenwood
 
 decisions in the federal circuit courts of appeal,
 
 see id.
 
 at 41-42,108 S.Ct. at 1629-30, as well as with numerous state court decisions.
 
 See id.
 
 at 42-43, 108 S.Ct. at 1630. Moreover, the
 
 Greenwood
 
 analysis has been found persuasive in the majority of states that have considered the issue of garbage searches under state constitutional search and seizure provisions.
 
 See, e.g., People v. Hillman,
 
 834 P.2d 1271,1277-78 (Colo.1992) (en banc) (ruling state constitution did not recognize reasonable expectation of privacy in garbage bags left at curbside for collection);
 
 State v. DeFusco,
 
 224 Conn. 627, 620 A.2d 746, 750-51 (1993) (following
 
 Greenwood
 
 in applying state constitutional search and seizure provision);
 
 Moran v. State,
 
 644 N.E.2d 536, 541 (Ind.1994) (holding Indiana Constitution’s reasonableness standard did not require suppression of contraband found during trash search);
 
 State v. Rydberg,
 
 519 N.W.2d 306, 310 (N.D.1994) (ruling state constitutional search and seizure provision not violated in search of garbage set out for collection behind house);
 
 State v. Payne,
 
 104 Ohio App.3d 364, 662 N.E.2d 60, 62 (1995) (adopting
 
 Greenwood
 
 rationale).
 
 [4]
 

 Finally, as an intermediate court of appeals, we would be reluctant, in any event, to become overly creative in fashioning a state constitutional rule different from the federal rule. Such a task lies more appropriately with the Utah Supreme Court as “the ultimate and final arbiter of the meaning of the provisions in the Utah Declaration of Rights and the primary protector of individual liberties.”
 
 State v. Anderson,
 
 910 P.2d 1229,1240 (Utah 1996) (Stewart, J., concurring in the result).
 
 See also State v. Larocco,
 
 742 P.2d 89, 95 n. 7 (Utah.Ct.App.1987) (stating that any departure from Fourth Amendment case law “should be announced by our state’s supreme court, not this court”),
 
 rev’d on other grounds,
 
 794 P.2d 460 (Utah 1990).
 

 For the foregoing reasons, we decline to read article I, section 14 of the Utah Constitution as providing greater protection to residential garbage placed on the street for collection than would be available under the federal Fourth Amendment.
 

 CONCLUSION
 

 The affidavit in support of the search warrant in this case provided the magistrate with a sufficient basis on which to premise his probable cause determination. Because Utah citizens do not have a reasonable expectation of privacy in garbage set out for collection beyond the curtilage of a home, article I, section 14 of the Utah Constitution does not prohibit the warrantless search of such garbage. We therefore affirm the trial court’s order denying defendants’ motion to suppress.
 

 BENCH and JACKSON, JJ., concur.
 

 [1]
 

 . Indeed, from all that appears in the affidavit, the unidentified men could have mistakenly broken into the wrong house.
 

 [2]
 

 . Article I, section 14 of the Utah Constitution states:
 

 The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.
 

 The Fourth Amendment differs only in punctuation and grammar.'
 

 [3]
 

 . Under this two-pronged inquiry, the determination of Fourth Amendment protections hinges on "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'”
 
 Katz,
 
 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).
 

 [4]
 

 . Apparently, only three states have expressly interpreted their state constitutions more broadly than their federal counterpart in the area of garbage searches.
 
 See State v. Tanaka,
 
 67 Haw. 658, 701 P.2d 1274 (1985);
 
 State v. Hempele,
 
 120 NJ. 182, 576 A.2d 793 (1990);
 
 State v. Boland,
 
 115 Wash.2d 571, 800 P.2d 1112 (1990) (en banc). Defendants cite to all three of these decisions in support of their state constitutional argument. However, especially because these decisions involve facts distinguishable from the instant case,
 
 see Tanaka,
 
 701 P.2d at 1275-76 (police officer trespassing on private property); unique state constitutional provisions,
 
 see Bo-land,
 
 800 P.2d at 1115-17 (construing state constitutional provision providing that “[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law”); and a significant departure from the two-pronged test enunciated by Justice Harlan in
 
 Katz, see Hem-pele,
 
 576 A.2d at 801-02 (applying only one of two prongs of Justice Harlan's
 
 Katz
 
 test), we are not persuaded by defendants’ argument that we should join this small minority of jurisdictions.