**STATE of Utah, Plaintiff and Petitioner,**

v.

**Wallace DAVIS, Defendant and Respondent.**

**No. 960005.**

Supreme Court of Utah.

July 14, 1998.

Jan Graham, Att'y General, Todd A. Utzinger, Ass't Att'y General, Marian Decker, Ass't Att'y General, Salt Lake City, for plaintiff.

Fred G. Metos, Salt Lake City, for respondent.

STEWART, Justice:

We granted certiorari to review the Court of Appeals' decision that the forfeiture of defendant Wallace Davis's car, pursuant to Utah Code Ann. § 58–37–13(1)(e) (1994), constituted punishment for double jeopardy purposes and barred a subsequent criminal prosecution under Utah Code Ann. § 58–37–8(2)(a)(i) for possession of a controlled substance. *State v. Davis,* 903 P.2d 940, 950 (Utah Ct.App.1995). Davis's car was forfeited to the State after a search of the vehicle revealed a small quantity of cocaine. Davis moved for dismissal of the criminal charge filed against him on the ground that the charge constituted an attempt to punish him twice for the same crime and therefore violated his constitutional right against double jeopardy. The Court of Appeals reversed the district court's denial of Davis's motion based on the federal constitutional guarantee against double jeopardy.

## I. BACKGROUND

On January 18, 1994, West Valley police officers stopped Davis for a vehicle license violation. Because there was an outstanding warrant for Davis's arrest, the officers arrested him and impounded his vehicle. One quarter gram of cocaine was found in the vehicle. The State seized and held his vehicle for forfeiture. Davis opposed the forfeiture on the ground that it violated the Excessive Fines Clause of the Eighth Amendment. At the forfeiture proceeding, held on May 11, 1994, the trial court rejected Davis's argument and ordered the vehicle forfeited. Davis did not appeal that decision.

The State filed criminal charges against Davis on April 12, 1994, for possession of cocaine. After judgment was entered in the forfeiture proceeding, Davis moved to dismiss the criminal charge, arguing that its prosecution would violate his right against double jeopardy under both the Utah and United States Constitutions. The district court found that the "Blue Book" value of Davis's vehicle was between $2925 and $4600, and that the cost of prosecuting the actions against Davis had been approximately $2500. The district court, relying on the rationale provided by *United States v. Halper*, 490 U.S. 435, 449, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), rejected Davis's argument that double jeopardy principles prevented the criminal prosecution. The district court ruled that:

> the penalty suffered by the defendant in the forfeiture proceeding did not exceed what could reasonably be regarded as the equivalent compensation for the state[']s loss, and the penalty is not entirely unrelated to the actual damages suffered. The forfeiture penalty assessed in the forfeiture action was not so disproportionate to the cost of investigating and prosecuting the defendant that it constitutes "punishment" rather than "rough remedial justice." It does not violate the double jeopardy provisions of the United States or

Utah [C]onstitutions pursuant to *U.S. v. Halper* . . . .

The Court of Appeals heard the case on interlocutory appeal. A divided panel of that court reversed the district court's denial of Davis's motion. The Court of Appeals held that the Double Jeopardy Clause in the Federal Constitution precluded any prosecution of Davis for possession of the cocaine found in his vehicle because forfeiture of the vehicle constituted a prior criminal punishment under *Austin v. United States*, 509 U.S. 602, 622, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin* the United States Supreme Court held that *in rem* forfeiture proceedings were subject to the Eighth Amendment Excessive Fines Clause. *Id.; see also United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (treating *in personam* forfeiture). The Utah Court of Appeals ruled that *Austin*, in addition to its Eighth Amendment application, also provided the governing definition of criminal punishment for purposes of the federal Fifth Amendment Double Jeopardy Clause. *State v. Davis*, 903 P.2d 940, 948 (Utah Ct.App.1995). The Court held that the forfeiture of Davis's car was punishment under *Austin*.[1] *Id.* at 949–50. The Court of Appeals also held that Davis failed to offer a distinct and separate analysis to support his state constitutional argument and therefore declined to decide that issue. *Id.* at 942 n. 5.

We granted the State's petition for certiorari. Subsequently, the United States Supreme Court decided *United States v. Ursery*, 518 U.S. 267, 286–87, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), which held that the Eighth Amendment as construed by *Austin* did not govern the issue of whether a forfeiture constituted punishment under the Fifth Amendment double jeopardy clause. The Supreme Court also recently decided *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 494–95, 139 L.Ed.2d 450 (1997), which disavows other recent Supreme Court cases that had placed heavy emphasis on the disproportionality of civil penalties in deciding whether they are criminal punishments.

---

1. The State also argued that the *in rem* forfeiture and the criminal charge were effectively one proceeding, avoiding double jeopardy analysis. The Court of Appeals rejected this argument and the State has not contested that portion of the decision in its petition for certiorari or in its argument before this Court.

## II. DAVIS'S CLAIM THAT PROSECUTION IS BARRED BY THE FEDERAL CONSTITUTIONAL PROSCRIPTION ON DOUBLE JEOPARDY

The Court of Appeals' interpretation of the Federal Constitution is a question of law that we review for correctness. *State v. Harmon,* 910 P.2d 1196, 1199 (Utah 1995). If forfeiture of Davis's car as a consequence of the controlled substance found in it constitutes punishment of Davis under the Fifth Amendment double jeopardy clause, as applied to the states via the Fourteenth Amendment, then the State may not criminally prosecute Davis for unlawful possession of that controlled substance. If, however, the *in rem* forfeiture of Davis's vehicle was not a punishment for double jeopardy purposes, then the double jeopardy clause does not bar the criminal information filed against him.

The Court of Appeals stated that "with respect to determining whether forfeiture constitutes punishment, we hold that it makes no difference whether the analysis applies to the Fifth or Eighth Amendment." *Davis,* 903 P.2d at 949. The Court relied on *Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), an Eighth Amendment Excessive Fines case, to hold that the forfeiture of Davis's car constituted punishment for Fifth Amendment double jeopardy purposes.

The premise employed by the Court of Appeals has been rejected by *United States v. Ursery,* 518 U.S. 267, 278–88, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 494–95, 139 L.Ed.2d 450 (1997), which were decided by the United States Supreme Court after the Court of Appeals handed down its opinion. Of particular significance is *Ursery,* which rejected the approach taken by the Court of Appeals in deciding whether civil forfeitures constitute a punishment for double jeopardy purposes. *Ursery* ruled that "punishment," as that term is defined for the Eighth Amendment Excessive Fines Clause, differs from the definition of the same word in the context of *in rem* forfeiture proceedings under the multiple punishments category of the Fifth Amendment Double Jeopardy Clause. *Ursery,* 518 U.S. at 286–87, 116 S.Ct. 2135.

The issue in *Ursery* was the same as the issue here: When does an *in rem* forfeiture constitute punishment for double jeopardy purposes? *Id.* at 288, 116 S.Ct. 2135. *Ursery* held that *in rem* forfeitures are substantively different from fines and penalties that are levied directly upon persons, and must be treated differently. *Id.* at 278, 116 S.Ct. 2135. Cases dealing with *in personam* fines or forfeitures, or cases treating Eighth Amendment issues, are judged under a different standard than those dealing with *in rem* forfeitures. *Id.* at 278–88, 116 S.Ct. 2135. *Ursery* stated that "[o]ur cases reviewing civil forfeiture under the Double Jeopardy Clause adhere to a remarkably consistent theme.... [I]n rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines." *Id.* at 287, 116 S.Ct. 2135; *see also One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 236, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931); *State v. $175,800,* 942 P.2d 343, 349 (Utah 1997). *Ursery* concluded that "nothing in *Halper* ... or *Austin,* purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause." 518 U.S. at 278, 116 S.Ct. 2135. Nevertheless, *Ursery* also acknowledged that there is at least a possibility that an *in rem* forfeiture could be so punitive that it would constitute a criminal punishment for double jeopardy purposes. *Id.* at 289 n. 3, 116 S.Ct. 2135.

*Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 494–95, 139 L.Ed.2d 450 (1997), further narrowed the circumstances in which *any* civil penalty (whether it be a fine or a forfeiture) may constitute punishment for double jeopardy purposes. *Hudson* held that jeopardy cannot be established by a civil fine or penalty unless it meets the criteria of *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 165, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Hudson,* 118 S.Ct. at 493.

*Ward* established a test to decide whether a civil penalty constitutes jeopardy:

> First, we ... determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

448 U.S. at 248–49, 100 S.Ct. 2636 (citations omitted). To determine whether a nominally civil penalty is "so punitive either in purpose or effect" as to constitute a criminal penalty, *Ward* relied upon *Mendoza–Martinez. Id.* at 249–50, 100 S.Ct. 2636. *Mendoza–Martinez* set out a non-exclusive list of criteria for determining whether a nominally civil statute actually prescribed a criminal penalty:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. at 168–69, 83 S.Ct. 554.

*Hudson* disavowed a portion of the holding of an earlier case, *United States v. Halper*, 490 U.S. 435, 449, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), which had effectively held the last of the *Mendoza–Martinez* factors—excessiveness in relation to the non-penal purpose assigned to the sanction—dispositive in cases where a fine or penalty was unusually disproportionate to the cost caused by the wrongdoer. *Hudson*, 118 S.Ct. at 494–95. Thus, *Hudson* makes it less likely that a civil penalty or fine constitutes criminal punishment for double jeopardy purposes.

Turning to the instant case, we address Davis's contentions under the two-prong *Ward* standard, reaffirmed by *Ursery* and *Hudson*: (1) whether the Legislature indicated that the forfeiture measure should be treated as a civil penalty; and (2) whether it is so punitive in purpose or effect as to negate that intention. The version of the statute in effect at the time of Davis's prosecution was Utah Code Ann. § 58–37–13 (1994).[2] The Legislature did not expressly label that version of the statute. It simply stated: "Proceedings of this section are independent of any other proceedings, whether civil or criminal, under this chapter or the laws of this state."[3] *Id.* § 58–37–13(9)(h) (1994).

Lacking an express indication of the intended nature of the statute, we must derive it by implication. In examining this question, *Ursery* noted that "'Congress' intent ... is most clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute[s].'" *Ursery*, 518 U.S. at 288, 116 S.Ct. 2135 (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)). The procedural mechanisms in Utah Code Ann. § 58–37–13 (1994), imply that the Legislature did not intend forfeiture under the statute to be a criminal punishment. The statute required that a complaint be filed and notice given to possible claimants. *See id.* § 58–37–13(9)(a). Claimants were given twenty days to respond, and then a hearing had to be set within twenty days. *See id.* § 58–37–13(9)(f)–(g). The court was then required to conduct a hearing and rule on the petition for forfeiture based on a preponderance of the evidence standard. See *id.* § 58–37–13(9)(g). These procedures were relatively informal and clearly did not contain any of the tradi-

---

2. The statute has subsequently been amended to include a section containing definitions and to specifically provide that if one is criminally charged, a forfeiture may proceed as part of the criminal prosecution. *See* Utah Code Ann. § 58–37–13(9)(c) (1998).

3. The current version of the statute specifically designates a separate forfeiture proceeding as a "civil in rem" action. Utah Code Ann. § 58–37–13(9)(c) (1998).

tional indicia of a criminal penalty or prosecution.

The only factor in the statute's procedural mechanism that could be construed to indicate an intent to render a forfeiture proceeding criminal in nature was the requirement that the complaint be prepared and filed by the same prosecuting office that handles criminal actions. This requirement, however, assumed that the forfeitable property was likely contraband or an instrumentality of a crime. The officials responsible for handling the criminal matter would also have custody of, and familiarity with, the forfeitable property. Hence, we believe the Legislature required prosecuting officials to file the forfeiture complaint for pragmatic reasons and not because the Legislature viewed the statute as creating a criminal penalty.

Moving to the second prong of the *Ward* analysis, we must decide "whether the statutory scheme was so punitive either in purpose or effect as to negate [the] intention [that the statute be civil in nature]." *Ward*, 448 U.S. at 249. On this question *Ursery* establishes a firm presumption that *in rem* forfeitures are not punishment for double jeopardy purposes. 518 U.S. at 278, 287–88, 116 S.Ct. 2135. Only the " 'clearest proof' " of a punitive form or effect will suffice to overcome that presumption. *Id.* at 289 n. 3, 116 S.Ct. 2135.

While *Ursery* provides little guidance for deciding when a forfeiture becomes so punitive that it constitutes criminal punishment, there have been a number of United States Supreme Court cases examining that question in the *in personam* context. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 149, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *Marcus v. Hess*, 317 U.S. 537, 545, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). Because *Ursery* held that *in rem* forfeitures are less likely to be treated as criminal punishment than *in personam* penalties, any forfeiture that is not severe enough to constitute punishment under an *in personam* analysis cannot constitute punishment in the *in rem* context. In the instant case the parties stipulated that the "Blue Book" value of Davis's car was between $2925 and $4600. The parties also stipulated that the State's cost of investigating and prosecuting the cases was approximately $2,500. Federal *in personam* cases have allowed civil penalties that amounted to many times more than the cost of prosecuting cases. *See Rex Trailer*, 350 U.S. at 154, 76 S.Ct. 219; *Marcus v. Hess*, 317 U.S. at 548–49, 63 S.Ct. 379. The penalty imposed in this case was therefore well within the limits prescribed by *in personam* cases, let alone those prescribed for *in rem* cases.

Moreover, the recent holding in *Hudson* places a more substantial burden on the person challenging a civil fine or forfeiture under the Federal Constitution. The only substantial argument that Davis offers in this case is that the penalty of forfeiture was disproportionate to the cost of his crime. Not only was that cost not disproportionate under the pre-*Hudson* rationale offered by *Halper*, but the post-*Hudson* rationale makes clear that disproportionality of cost is only one factor among many. 522 U.S. 93, 118 S.Ct. 488, 494–95, 139 L.Ed.2d 450. In any event, there do not appear to be any other factors militating in favor of a finding that forfeiture in this case was a criminal punishment. In sum, we hold that under *Ursery* and *Hudson* the forfeiture of Davis's car was not punishment for purposes of the federal Double Jeopardy clause.

■ Davis also argues that we should treat his state constitutional claims as an alternate ground for upholding the Court of Appeals' ruling. *See State v. South*, 924 P.2d 354, 357 (Utah 1996). We decline to do so on the same ground as the Court of Appeals. *See Davis*, 903 P.2d 940, 942 n. 5 (Utah Ct.App.1995). The Court of Appeals ruled that Davis had failed to properly raise his claim under the Utah Constitution. *Id.* We agree. Davis has not adequately set forth any separate legal analysis and has not otherwise suggested a reason that warrants a distinct analytical treatment under the Utah Constitution. *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988).

We therefore reverse the Court of Appeals and affirm the trial court.

HOWE, C.J., and RUSSON, J., concur in Justice STEWART's opinion.

DURHAM, Associate Chief Justice, dissenting.

I disagree with the majority opinion's conclusion that Davis has "failed to properly raise his claim under the Utah Constitution" and that he "has not adequately set forth any separate legal analysis ... [or] otherwise suggested a reason that warrants a distinct analytical treatment under the Utah Constitution." I therefore dissent from its decision not to undertake a state analysis.

The procedural history of this case reflects the following course of events. The State filed a criminal information against Davis on April 12, 1994. On May 11, 1994, a trial court ordered his vehicle forfeited. Davis did not appeal the forfeiture. On August 9, 1994, Davis filed a motion to dismiss the criminal charges against him on the ground that, given the forfeiture, a subsequent criminal proceeding would violate the double jeopardy clauses of both the federal and state constitutions, in view of the completed forfeiture of his vehicle. The district court denied the motion. On interlocutory appeal, a divided court of appeals reversed. *State v. Davis,* 903 P.2d 940 (Utah Ct.App.1995), *cert. granted,* 916 P.2d 909 (Utah 1996). Construing the federal Constitution, the court adopted the Eighth Amendment definition of punishment for double jeopardy purposes and dismissed the criminal charges. *Id.* at 946. The court refused to treat Davis's state constitutional argument because he advanced the "same theory" for analysis under both the U.S. and Utah Constitutions. *Id.* at 942 n. 5.

On January 2, 1996, the State petitioned for certiorari on the following question:

For purposes of determining whether a civil forfeiture constitutes "punishment" under the Double Jeopardy Clause of the Fifth Amendment, should Utah adopt the Eighth Amendment Excessive Fines analysis of *Austin v. United States,* [509] U.S. [602], 113 S.Ct. 2801 [125 L.Ed.2d 488] (1993), or the Fifth Amendment Double Jeopardy analysis of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892 [104 L.Ed.2d 487] (1989), and *Department of Revenue v. Kurth Ranch,* [511] U.S. [767], 114 S.Ct. 1937 [128 L.Ed.2d 767] (1994)?

Davis's opposition brief, on the other hand, stated the question for review this way: "Did the court of appeals employ the correct definition for 'punishment' in determining if *a state or* federal Constitutional protection has been violated?" (Emphasis added.) We granted certiorari without specifying the question for review.

On June 24, 1996, the U.S. Supreme Court declined to adopt the Eighth Amendment definition of punishment and declared that in rem forfeiture, if civil in nature and application, does not constitute punishment for purposes of the federal Double Jeopardy Clause. *See United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). We heard oral arguments on this case on February 10, 1997. Both parties adjusted their arguments to account for the federal decision. Davis briefed and argued the state constitutional issue; the State did not, arguing that the issue was "not fairly included" in the question on which we granted certiorari.

I believe this court should take this opportunity to correct the court of appeals' reading of *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988). Where a party raises and briefs an argument based on state constitutional law, and that theory, if adopted, could provide a separate and independent ground for decision, the court should address the state constitutional argument. In *Lafferty* we stated "we will not engage in state constitutional analysis unless an argument for different analyses under the state and federal constitutions is briefed." *Id.* The appellate court read this language to mean that because Davis argued for similar analytic approaches under both the Utah and U.S. Constitutions it need only decide the federal issue. *See Davis,* 903 P.2d at 942 n. 5. The *Lafferty* reference to "different analyses" is indeed ambiguous enough to give rise to this interpretation. However, we intended in *Lafferty* to refer to independent free-standing *analysis,* not to theoretically identical analysis. An illustration of this principle can be found in our opinion in *American Fork City v. Crosgrove,* 701 P.2d 1069 (Utah 1985). There, interpreting article 1 section 12 of the Utah Constitution, we ultimately adopted a theory of the nature of the privilege against self-incrimination identical to that used by

the federal authorities construing the Fifth Amendment. *Id.* at 1074. However, we did so as a matter of independent, separate state constitutional analysis. *See id.* That is what we meant by a "different" analysis in *Lafferty;* it need not lead to a different result. Where a party has properly raised and separately briefed its reasoning for interpreting the state constitution in a certain manner, the court hearing the case should decide the issue, whether or not the same result is urged under the federal provisions.

This court's language in *Lafferty* was intended to discourage the practice by some litigants of making federal constitutional arguments and then mentioning, as an afterthought, that the act in question "also" violates state constitutional law, without further explanation. Where a party makes a separate and independent argument under state constitutional law, the court should decide the issue, even if the argument is similar to that advanced under federal law. The policy prohibiting deciding questions on constitutional grounds when they could be decided on non-constitutional ones also favors deciding state constitutional questions before federal. *See West v. Thomson Newspapers,* 872 P.2d 999, 1005–1007 (Utah 1994); *see also,* Hans A. Linde, *E Pluribus—Constitutional Theory and State Courts,* 18 Ga. L.Rev. 165, 178 & n. 36 (1984). The theoretical basis for decision under the Utah Constitution and U.S. Constitution may in some instances be similar, *see* Barry Latzer, *Four Half–Truths about State Constitutional Law,* 65 Temp. L.Rev. 1123, 1133–35 (1992); *see, e.g., Serrano v. Priest,* 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971) (citing U.S. Supreme Court cases to support finding that educational financing system violates California's Equal Protection Clause), but if a *party properly* asks Utah courts to answer a question of Utah law, they must do so. Even where some or much of the authority relied on for the state analysis is from federal sources, the court must decide the state constitutional issue *if it is fairly presented as an* independent question. Although the reasoning adopted may reflect or rely on federal authority, the state result may differ from the federal. *See Latzer,* at 1135 (citing different outcomes on "legitimate expectations of privacy"). If the result under state law does not resolve the federal question, the court must of course proceed to the federal analysis.

As we have observed previously, a failure to address state constitutional questions at the appellate level can cause significant obstacles and delays to the proper adjudication of constitutional issues. *West v. Thomson Newspapers,* 872 P.2d 999, 1005 n. 6 (Utah 1994) (relating history of a New York case wherein the state court decided an issue under federal constitutional law, was reversed by the U.S. Supreme Court for so doing, and on remand invoked the New York Constitution first deciding the issue in a way substantially similar to its analysis under the federal Constitution). The failure to follow this path has created similar problems in this case. At the appellate level, Davis's theory was that "punishment" had the same import under federal and state constitutional law. However, he did specifically argue that the Utah Constitution independently recognized forfeiture as punishment and thus the prosecution here violated his state constitutional right against double jeopardy as well as his federal right. Either theory, if successful, would prohibit prosecution. Thus the argument under the state provision was separate and independent, warranting decision.

Because the appellate court failed to decide the state constitutional issue and rested its entire decision on federal constitutional law, the U.S. Supreme Court's decision in *Ursery* negated its definition of punishment, leaving the case to be reconsidered in light of the change, and the state constitutional question still open. Because of this failure to consider the state constitutional issue, which was properly raised and briefed, the state double jeopardy doctrine question remains unaddressed.

Furthermore, the appellate court's failure to treat the state constitutional issue caused confusion regarding the petition and grant of certiorari: the State did not think the Utah Constitution was at issue, but Davis did. We have therefore been asked to review a potentially dispositive question which has not yet been treated by the court of appeals. I

believe we should remand to the court of appeals for treatment of the state constitutional question. As we have held in other cases, where the court of appeals fails to consider an argument properly before it, we will remand the case for consideration. *See, e.g., State v. South,* 924 P.2d 354, 357 (Utah 1996) (remanding case for consideration of alternate ground for affirmance where court had mistakenly refused to consider ground). Because Davis properly raised the state constitutional issue on appeal, and the court of appeals should have considered it, we should remand.

In a recent opinion, *State v. Jackson,* 937 P.2d 545 (Utah Ct.App.1997), the court of appeals refused to consider a state constitutional rule which would differ from the federal rule because "[s]uch a task lies more appropriately with the Utah Supreme Court." *Id.* at 550. Although we have the final say on such issues, there are numerous benefits that come from consideration and treatment of unconstitutional issues by the appellate court in the first instance.

In conclusion, I would ask the court of appeals to decide the state constitutional question originally asked of it in this case. If the answer to the state question had turned out to be dispositive in the first place, this case might have had a shorter history.[1]

ZIMMERMAN, J., concurs in Justice DURHAM's dissenting opinion.

---

1. This point is consistent with what Justice Hans Linde has called "the original logic of federalism." If the state constitution prohibits a prosecution in violation of its double jeopardy clause, there are no grounds for arguing that state law violates the federal Constitution. Just as we routinely rely on statutory or common law principles before turning to constitutional ones to determine rights, we should clarify what state law permits before we consider claimed federal constitutional violations. *See Sterling v. Cupp,* 290 Or. 611, 625 P.2d 123, 126 (1981); Hans A. Linde, *Without "Due Process", Unconstitutional Law in Oregon,* 49 Or. L.Rev. 125, 133–35 (1970).