**STATE of Utah, Plaintiff and Appellee,**

v.

**John HOLDEN, Defendant and Appellant.**

**No. 971236–CA.**

Court of Appeals of Utah.

July 23, 1998.

Wesley M. Baden, Vernal, for Defendant and Appellant.

Jan Graham and Marian Decker, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Defendant, John Holden, appeals the denial of two motions to suppress evidence. The first motion to suppress was premised on the grounds that surreptitious video surveillance and search of trash bags without a warrant violated the Fourth Amendment of the United States Constitution and article I, section 14 of the Utah Constitution. The second motion to suppress was based on the contention that the police had acted in bad faith when they destroyed nonincriminating evidence from the search of the trash bags. We affirm.

## BACKGROUND

John Holden lives in Vernal, Utah. His neighbor to the north complained to the police several times that because of the large number of people that visited Holden's home he suspected Holden was selling drugs. The Vernal Police Department responded to the neighbor's complaints by asking him if he would let the police install a video camera in his home to secretly record the activities in Holden's front yard. The neighbor consented, and during the afternoon of October 20, 1995, the police installed the camera. The camera recorded continuously until the early evening of October 22.

When the police arrived to retrieve the camera at 6:45 p.m. on October 22, they saw Holden remove two bags, one large and one small, from the back of the truck parked at his home and put them on the edge of the road pavement within one foot of the street, apparently for trash collection. The officers left the neighbor's home, but returned to Holden's house at 10:20 p.m. the same night and took one large bag, some similar smaller bags, and boxes of loose garbage apparently placed there at some other time.

The officers returned to the police station with the garbage and searched it. In the search of the larger bag and one of the smaller bags, the police found various drug paraphernalia with and without drug residue. During the search, the police separated out the incriminating items, marking and saving them. However, the rest of the trash in the

bags, including two envelopes addressed to Holden at his home address, some empty food cans, and packaging materials, was thrown away that same night.

Based on the incriminating items found in the bags seized from the home, the videotaped visits of over fifty-two cars on the fifty-two hour videotape recorded at Holden's neighbor's home, and statements by confidential informants, the police sought and obtained a warrant to search Holden's home and truck for drugs, paraphernalia, and any records of profits or distribution of the drugs. The police found, among other things, paraphernalia and marijuana seeds and stems in the search conducted pursuant to the warrant. Holden was charged with several counts of possession of methamphetamine, marijuana, and drug paraphernalia.

Based upon evidence introduced at the preliminary hearing, Holden moved to suppress the evidence obtained pursuant to the videotaping of his residence, the evidence found in the bags the police searched, and the evidence seized pursuant to the warrant. Holden argued that the videotaped surveillance was improper because the police failed to obtain a search warrant before videotaping. He further argued that the evidence from the bags should be suppressed because the search of the bags was done only after the police had illegally videotaped his home. Moreover, he contended that he had a reasonable expectation of privacy in his trash under the Utah Constitution, such that police could not legally search his trash without a warrant. Finally, he argued that the evidence found in the search conducted pursuant to the warrant should be suppressed because the warrant was based upon evidence from the allegedly illegal videotape and trash bag searches.

The trial court ruled that Holden did not have "a reasonable expectation of privacy [that] would require a warrant" before the police could videotape his home. Stating that "the police merely recorded on tape what was open to public view" and that "[t]he police certainly had a right to be in the place where the camera was set up," the trial court concluded that "[t]he fact that a video recording was stationed at the location rather than a police officer[ ] has no constitutional significance." It therefore denied the motion to suppress the videotape and the evidence from the bags as fruit of an illegal search.

The trial court further ruled that because Holden made "[n]o attempt ... to specifically examine [the Utah] Constitution and provide a basis as to why the Utah Constitution should be read more broadly [than the United States Constitution]," it could not conclude that the Utah Constitution protected Holden from a warrantless search of his trash. Accordingly, the trial court denied his motion to suppress the evidence obtained from the trash bags on this basis as well.

After the motion to suppress was denied, Holden filed another motion to suppress the evidence from the bags, this time asserting that the police had violated his federal constitutional due process rights by failing to preserve potentially useful evidence from their search of the trash bags. The trial court again denied this motion, concluding that the police had not acted in bad faith when they kept incriminating items but threw away the rest of the items found in the bags in the search.

Holden then entered a conditional guilty plea to one count of possession of methamphetamine, an enhanced second degree felony, and one count of possession of marijuana, an enhanced third degree felony, in violation of Utah Code Ann. §§ 58–37–8(2)(a)(i), 2(d), and 2(e) (1996 & Supp.1996), preserving his right to appeal the trial court's rulings on his two motions to suppress. This appeal followed.

## ANALYSIS

### I. Warrantless Videotaping of Holden's Front Yard

■ Holden argues that the police violated his Fourth Amendment right to be free from unreasonable searches and seizures when they failed to get a warrant before videotaping the front yard of his home. Before the Fourth Amendment requirement to obtain a search warrant is triggered, a defendant must meet a "twofold requirement, first that [person must] have exhibited an actual (subjective) expectation of privacy and, second,

... the expectation [must] be one that society is prepared to recognize as 'reasonable.' " *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *accord State v. Taylor,* 818 P.2d 561, 565 (Utah Ct.App.1991). We review the trial court's findings relative to a person's actual expectation of privacy "under a clearly erroneous standard." *Taylor,* 818 P.2d at 565. We review the conclusion "as to whether society is 'willing to recognize the individual's expectation of privacy as legitimate' ... under a correction of error standard." *Id.* (quoting *United States v. McBean,* 861 F.2d 1570, 1573 n. 7 (11th Cir.1988)).

### A. Expectation of Privacy

■ Holden contends that he had a reasonable expectation of privacy against being videotaped in his front yard because "[t]here can be no doubt that [he] would have been offended" if he knew that the police were watching him twenty-four hours a day from across the street. Citing federal case law, he argues that the police were required to obtain a search warrant before any videotaping could legally be done of his home.

We cannot agree. Although it is understandable that a person may feel "an immediate negative visceral reaction" to the thought of his house constantly being monitored by videotape over a period of time, *United States v. Cuevas–Sanchez,* 821 F.2d 248, 251 (5th Cir.1987),

> [i]t has long been the law that objects falling within the plain view of an officer from a position where he is entitled to be are not the subject of an unlawful search. "What a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." For an officer to look at what is in open view from a position lawfully accessible to the public cannot constitute an invasion of a reasonable expectancy of privacy.

*State v. Lee,* 633 P.2d 48, 51 (Utah 1981) (citations omitted).

In this case, the trial court found that "the police merely recorded on tape what was open to public view." Further, it found that "[t]he police ... had a right to be in the place where the camera was set up." It also found that the video surveillance recorded nothing different than would have been seen had an officer been at the same location for the entire time.

Holden does not attempt to challenge these findings. Instead, he seems to argue that we should adopt a per se rule, requiring the State to obtain a search warrant any time it wishes to use video surveillance of residential property. Not only is the federal and state case law clearly contrary to this position, *see* 1 Wayne R. LaFave, *Search & Seizure* § 2.7(f) (1996), but the case law that Holden cites to support his position does not support it. In *Cuevas–Sanchez,* the Fifth Circuit held that federal agents were required to get a search warrant to videotape activities in the defendant's backyard. *See* 821 F.2d at 249, 251. Critical to its analysis of the first prong of the expectation of privacy test was the fact that the defendant "had erected fences around his backyard, screening the activity within from views of casual observers." *Id.* at 251. It is true that on at least one side of the yard, backyard activity was more visible than on other sides of the yard; however, the court noted that the federal agents had specifically averred in an affidavit in support of a search warrant that " 'conventional law enforcement techniques, such as ... surveillance had been attempted but had failed.' " *Id.* at 250 (citation omitted). The court declared that the federal agents could not "have it both ways"—either the defendant had fenced off the yard sufficient to create an expectation of privacy or he had not. *Id.* The other federal cases cited by Holden apply only to search warrant requirements when officers are videotaping activities in which the defendants had a clear expectation of privacy. *See United States v. Mesa–Rincon,* 911 F.2d 1433, 1435 (10th Cir. 1990) (addressing video surveillance of building's interior after "surreptitious entry"); *United States v. Biasucci,* 786 F.2d 504, 507–08 (2d Cir.1986) (addressing video surveillance of interior of business offices), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54, 56 (1986); *United States v. Torres,* 751 F.2d 875, 876 (7th Cir.1984) (addressing video surveillance of interior of private building).

This case is, of course, factually distinct. The surveillance was of the front yard and of areas "open to the public view." There is no indication in the court's factual findings that Holden had attempted to shield any of the activities from public view or that the yard was in any way screened from public view.

The only other case that comes close to supporting Holden's position is an Indiana case, *State v. Thomas*, 642 N.E.2d 240, 244–46 (Ind.Ct.App.1994). However, central to the *Thomas* court's determination that the defendant's Fourth Amendment rights had been violated when a search warrant had not been obtained was the "grossly intrusive vantage point, the campstore's attic and ceiling, which was an area not accessible to the public in open view." *Id.* at 245. Equating placing cameras in the ceiling to placing cameras over a closed public restroom stall, the court stated that the defendant "had an expectation of privacy in the campstore, subject to acts observable by the public from a public vantage point." *Id.* at 246.

In this case, the camera's vantage point was across the street at a neighbor's house. The police did not secretly place a camera directly over Holden's yard to observe his movements. Although it is true that Holden could not readily see the camera in the neighbor's home, he knew that others, i.e., anybody who was entitled to enter the neighbor's home, could be watching from that window observing the activities outside of his home. It was therefore a vantage point from which other members of the public could view his activities. Further, although the scope of the members of the public that could view from that vantage point was necessarily limited to those who were invited, the view was presumably not much different from what would have been the view of someone walking along the street or driving a car past the house.

The trial court therefore did not clearly err when it found that Holden had no subjective expectation of privacy in the activities in his front yard visible from his neighbor's window.[1] Thus, the trial court properly denied Holden's motion to suppress the evidence on this basis. Further, because we hold that the trial court did not err regarding the warrantless videotaping of Holden's home, we also hold that the search of the bags, to the extent the search was incident to the videotaping of Holden's home, was also proper, and not "fruit" of any violation.[2] *See State v. Genovesi*, 909 P.2d 916, 919 (Utah Ct.App.1995) ("Subject to very few exceptions, if a violation of the Fourth Amendment has occurred and the fruits of that violation are subsequently offered into evidence against a defendant who has standing to object and who properly objects, the trial court must suppress the evidence at trial." (Footnotes omitted.)).

## II. Search of the Bags

Holden argues, asserting the same arguments made in *State v. Jackson*, 937 P.2d 545 (Utah Ct.App.), *cert. denied*, 945 P.2d 1118 (Utah 1997), that he had an expectation of privacy in his garbage bags under article I, section 14 of the Utah Constitution.[3] As we stated in *Jackson*, "we decline to read article I, section 14 of the Utah Constitution as providing greater protection to residential garbage placed on the street for collection than would be available under the federal Fourth Amendment." *Id.* at 550.

As for Holden's attempt to factually distinguish this case from *Jackson* and *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), by asserting the police had no reason to believe the bags were garbage bags, Holden failed to make the argument to the district court, and, therefore, failed to preserve the argument. *See*

---

1. To the extent that the trial court's decision is based on the second prong of the test, i.e.,whether Holden's expectation of privacy was one society was willing to accept as reasonable, we hold that the trial court correctly concluded that any expectation of privacy Holden may have had in his activities in his front yard was not reasonable.

2. Because the defendant failed to adequately brief and argue his independent state constitutional claim, we decline to address it. *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988).

3. We review the trial court's conclusion for correctness. *State v. Jackson*, 937 P.2d 545, 547 (Utah Ct.App.1997).

*State v. Pledger,* 896 P.2d 1226, 1229 n. 5 (Utah 1995); *State v. Johnson,* 774 P.2d 1141, 1144–45 (Utah 1989). We decline to address it.

Accordingly, the trial court correctly denied the motion to suppress the trash bags based on Holden's expectation of privacy in the trash bags.

### III. Destruction of "Potentially Useful Evidence"

■ Finally, Holden argues that the evidence from the garbage bags should be suppressed because the police acted in bad faith when they failed to save other evidence in the trash bags. Holden contends that the evidence in the trash bag was potentially useful to show that the bags were not Holden's bags or that Holden had not had control of them for some time.

This issue of police misconduct in destroying potentially useful evidence involves " 'what might loosely be called the area of constitutionally guaranteed access to evidence.' " *Arizona v. Youngblood,* 488 U.S. 51, 55, 109 S.Ct. 333, 336, 102 L.Ed.2d 281 (1988) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). In those cases in which the state has "suppressed . . . evidence [it knows to be] favorable to the accused," the United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment has been violated "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 55, 109 S.Ct. at 336. Regarding cases when the state has failed "to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," *id.* at 57, 109 S. Ct at 337, a defendant must show "bad faith on the part of the police," *id.* at 58, 109 S.Ct. at 337. Bad faith requires that a defendant prove more than mere negligence; a defendant must show that "the police . . . by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.*

The defendant carries this burden because

"[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

*Id.* at 57–58, 109 S.Ct. at 337 (quoting *California v. Trombetta,* 467 U.S. 479, 486, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)) (other citations omitted).

Holden does not argue that the evidence in the trash bags was exculpatory. Rather, he contends only that the evidence in the trash bags was potentially useful. Thus, he has the burden of proving bad faith on the part of the police. The trial court concluded that Holden failed to meet this burden.

The State, citing federal case law, urges that we apply a clearly erroneous standard to the trial court's determination that the police did not act in bad faith. *See, e.g., United States v. Weise,* 89 F.3d 502, 504 (8th Cir. 1996) (applying clearly erroneous standard to district court's "finding that the police officers did not act in bad faith"); *United States v. Bohl,* 25 F.3d 904, 909 (10th Cir.1994) ("The inquiry into allegations of prosecutorial bad faith presents a mixed question of fact and law in which 'the quintessential factual question of intent' predominates." (Citation omitted.)); *United States v. McKie,* 951 F.2d 399, 403 (D.C.Cir.1991) ("[W]e certainly cannot say that the district court's decision regarding the quintessential factual question of [bad faith] was clearly erroneous.").

We are aware that we must follow federal standards of review when expressly mandated to do so by Congress or the United States Supreme Court as a matter of substantive federal law. However, absent such a mandate, we think that the standard of review is a question to be determined by the law of the forum performing the appellate review.

*State v. Thurman,* 846 P.2d 1256, 1266–67 (Utah 1993) (footnote omitted). In this case,

there is no such mandate, and, accordingly, we adopt our own standard of review.

■ Without question, the determination of whether specific police conduct rises to the level of bad faith is a question of law, reviewed under a correctness standard. *See State v. Pena,* 869 P.2d 932, 936–37 (Utah 1994). However, because the determination of bad faith turns on " 'the quintessential factual question of intent,' " *Bohl,* 25 F.3d at 909 (citation omitted); *McKie,* 951 F.2d at 403, the bad-faith legal standard "is one that conveys a measure of discretion to the trial judge when applying that standard to a given set of facts." *Pena,* 869 P.2d at 939. As in *Pena,* a case involving a constitutional question dependent on application of a legal standard to a given set of facts, it is impossible for us to precisely define the scope of that discretion other than to say that "we would not anticipate a close, de novo review. On the other hand, a sufficiently careful review is necessary to assure that the purposes of the [bad-faith] requirement are served." *Id.* Accordingly, we apply an abuse-of-discretion standard of review.

Holden argues that the police acted in bad faith when they failed to save evidence because "the burden of preservation was minimal" and because the police acted too quickly in disposing of the trash without consulting supervisors or written police procedures. However, as discussed above, Holden has the burden of proving that "the police … by their conduct indicate[d] that the evidence [destroyed] could form a basis for exonerating the defendant." *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337. In this case, the trial court found that there were no written procedures that the officers could have consulted and that there was no policy that the police consult with a supervisor before gathering evidence. The trial court further found that the "officers did not recognize any of [the discarded] items as being useful in this case."

The trial court's factual findings are clear, and Holden does not dispute them. The trial court explicitly found no evidence in the hearing that the police, by their conduct or otherwise, knew that any evidence was excul-patory or had potential value to Holden. Thus, the trial court did not abuse its discretion in concluding that the police had not acted in bad faith in simply doing with the rest of his garbage what Holden intended would be done with it, i.e., disposing of it. Accordingly, the trial court properly denied Holden's motion to suppress the evidence.[4]

## CONCLUSION

The trial court's finding that Holden had no subjective expectation of privacy in the activities conducted in his home's front yard was not clearly erroneous. The trial court correctly concluded that article I, section 14 of the Utah Constitution does not grant Holden an expectation of privacy in garbage bags he has placed on the street for collection. Finally, the trial court did not err when it concluded that the police had not acted in bad faith when they destroyed other evidence from the trash bags they searched. Accordingly, the trial court's orders denying Holden's motions to suppress are affirmed.

WILKINS, Associate P.J., and ORME, J., concur.

---

4. Because the defendant failed to adequately brief and argue his independent state constitutional claim, we decline to address it. *See Lafferty,* 749 P.2d at 1247 n. 5.